**15-25-00209-CV**

ACCEPTED
15-25-00209-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
11/18/2025 7:46 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-_____

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
11/18/2025 7:46:49 PM
CHRISTOPHER A. PRINE
Clerk

# IN THE COURT OF APPEALS FOR THE FIFTEENTH DISTRICT AUSTIN, TEXAS

*In re TikTok Inc.; TikTok Ltd.; TikTok Pte. Ltd.;*
*TikTok U.S. Data Security Inc.; ByteDance Ltd.; and ByteDance Inc.,*

**Relators.**

On Petition for Writ of Mandamus from the
250th District Court of Travis County, Texas
Cause No. D-1-GN-25-003118, The Honorable Cory Liu

**Relators' Motion for Temporary Relief**
**Pending Resolution of Relators' Writ of Mandamus**

Neema T. Sahni (*pro hac vice*)
nsahni@cov.com
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Tel. (424) 332-4800
Fax. (424) 332-4749

Megan A. Crowley (*pro hac vice*)
mcrowley@cov.com
**COVINGTON & BURLING LLP**
850 Tenth Street, NW
Washington, DC 20001
Tel. (202) 662-6000
Fax. (202) 778-5112

Brandon Duke
bduke@omm.com
**O'MELVENY & MYERS LLP**
700 Louisiana St., Suite 2900
Houston, TX 77002
Tel.  (832) 254-1500
Fax. (832) 254-1501

**ATTORNEYS FOR RELATORS**

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

**Relators:** TikTok Inc.; TikTok Ltd.; TikTok Pte. Ltd.; TikTok U.S. Data Security Inc.; ByteDance Ltd.; and ByteDance Inc.

**Counsel for Relators:** Neema Sahni
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067

Megan A. Crowley
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001

Brandon Duke
O'MELVENY & MYERS LLP
700 Louisiana St., Suite 2900
Houston, TX 77002

**Real Party in Interest:** State of Texas

**Counsel for Real Party:** Richard McCutcheon
Assistant Attorney General
Consumer Protection Division
808 Travis Street, Suite 1520
Houston, Texas 77002

David H. Thompson
Adam P. Laxalt
Brian W. Barnes
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036

ii

**Respondent:** Judge Cory Liu
250th District Court
Travis County Civil & Family Court
1700 Guadalupe Street
9th Floor
Austin, TX 78701

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................1

STATEMENT OF FACTS .......................................................................... 2

STANDARD FOR TEMPORARY RELIEF UNDER RULE 52.10 ...................... 4

ARGUMENT............................................................................................ 6

I.    Relators are likely to succeed on their mandamus petition. .......................... 6

    A.    The trial court abused its discretion. ....................................................7

    B.    Relators have no adequate remedy through appeal. ...........................12

II.   Temporary relief is necessary to prevent irreparable harm to Relators'
    constitutional and statutory rights.............................................................. 13

CONCLUSION AND PRAYER ........................................................................ 15

CERTIFICATE OF COMPLIANCE.................................................................. 17

CERTIFICATE OF SERVICE.......................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*A.B. v. Salesforce, Inc.*,
   123 F.4th 788 (5th Cir. 2024) .................................................................. 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................ 14

*In re Butt*,
   495 S.W.3d 455 (Tex. App.—Corpus Christi-Edinburg 2016, no
   pet.) ..................................................................................................... 5, 14

*In re City of Houston*,
   2024 WL 4846843 (Tex. App.—Houston [1st Dist.] Nov. 21,
   2024, no pet.)............................................................................................ 14

*Comm'n for Lawyer Discipline v. Benton*,
   980 S.W.2d 425 (Tex. 1998) ...................................................... 7, 8, 9, 13

*In re Diamond Offshore Gen., LLC*,
   2023 WL 2483550 (Tex. App.—Houston [1st Dist.] Mar. 14, 2023,
   pet. denied)................................................................................................. 5

*Doe v. MySpace, Inc.*,
   528 F.3d 413 (5th Cir. 2008) .................................................................. 11

*In re Essex Ins. Co.*,
   450 S.W.3d 524 (Tex. 2014) ............................................................... 6, 12

*In re Facebook, Inc.*,
   625 S.W.3d 80 (Tex. 2021) ........................................................... 11, 12, 13

*In re Home Depot U.S.A., Inc.*,
   2025 WL 899848 (Tex. App.—Houston [14th Dist.] Mar. 25,
   2025, pet. filed)........................................................................................... 5

*In re Indus. Specialists, LLC*,
   2018 WL 2727606 (Tex. App.—Houston [1st Dist.] June 7, 2018,
   no pet.) ......................................................................................................... 5

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ........................................................................... 11

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
585 U.S. 755 (2018) ........................................................................... 12

*Perry v. Del Rio*,
66 S.W.3d 239 (Tex. 2001) ...................................................................7

*In re Prudential Ins. Co. of Am.*,
148 S.W.3d 124, 136 (Tex. 2004) ...................................................... 13

*Riverside Nat'l Bank v. Lewis*,
603 S.W.2d 169 (Tex. 1980)............................................................... 10

*State ex rel. Rosenblum v. TikTok Inc.*,
2025 Ore. Cir. LEXIS 5135 (Or. Cir. Ct. June 13, 2025) ................... 11

*In re State*,
711 S.W.3d 641 (Tex. 2024) ................................................. 4, 5, 13, 14

*In re Sydow Firm, PLLC*,
2024 WL 2061168 (Tex. App.—Houston [1st Dist.] May 9, 2024,
no pet.) ...............................................................................................5

*Transocean Offshore Deepwater Drilling, Inc. v. Seadrill Ams., Inc.*,
2015 WL 6394436 (S.D. Tex. Oct. 22, 2015) ..................................... 15

*Walker v. Packer*,
827 S.W.2d 833 (Tex. 1992)............................................................. 7, 9

*Word of Faith World Outreach Ctr. Church, Inc. v. Morales*,
787 F. Supp. 689 (W.D. Tex. 1992)................................................... 10

**Statutes**

Communications Decency Act, 47 U.S.C. § 230.............................*passim*

Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17.41, *et
seq.* ............................................................................................*passim*

Securing Children Online through Parental Empowerment Act, Tex.
   Bus & Com. Code §§ 509.001, *et seq.* ..........................................*passim*

**Other Authorities**

Tex. R. App. P. 52.10 .............................................................. 1, 4, 5, 16

Tex. R. Civ. P. 91a .....................................................................*passim*

## INTRODUCTION

Relators TikTok Inc., TikTok Ltd., TikTok Pte. Ltd., TikTok U.S. Data Security Inc., ByteDance Ltd., and ByteDance Inc. respectfully move to stay the proceedings below pending this Court's resolution of Relators' concurrently filed Petition for Writ of Mandamus. Tex. R. App. P. 52.10.

As the mandamus demonstrates, the trial court committed four clear abuses of discretion in denying Relators' Rule 91a Motion to Dismiss—errors that implicate Relators' constitutional rights, statutory immunities, and the limits of the State's enforcement authority. These issues go to the heart of whether the State may pursue claims under the Securing Children Online Through Parental Empowerment (SCOPE) Act and the Deceptive Trade Practices Act (DTPA). A stay is necessary to safeguard Relators' constitutional and statutory rights while this Court considers the mandamus petition.

The State's SCOPE Act claims rest on vague statutory language that, as applied to Relators, fails to provide fair notice and invites arbitrary enforcement. The State conceded these due-process violations during the Rule 91a hearing— admitting, for example, that it does not know "what [Relators] are currently doing that's alleged to be a violation of the Act" or how the Act's requirements apply to them. MR 0421:10–22; MR 0432:13–24. Yet the trial court allowed those claims to

1

proceed. The court compounded its error by also permitting DTPA claims that (1) stretch the statute to reach beyond its text to apply—for the first time—to conduct that cannot even theoretically affect any statutory "consumer" and (2) disregard Relators' statutory immunity from suit under Section 230 of the Communications Decency Act ("Section 230") and their First Amendment protections. *See* Mand. Pet. at 19–38.

Mandamus is the only adequate remedy, and a stay is essential to preserve Relators' Due Process, First Amendment, and Section 230 rights while this Court considers the mandamus petition.

## STATEMENT OF FACTS

On October 3, 2024—one month after the SCOPE Act went into effect and without any prior outreach or investigation—the State of Texas sued Relators, alleging three violations of the Act: that Relators failed to implement a "commercially reasonable" parental verification method (Count XI), improperly disclosed minors' personal information without verified parental consent (Count XII), and failed to provide verified parents with required tools under the Act (Count XIII). The State also brought ten claims under the Texas DTPA, asserting that Relators' age ratings and app store questionnaire responses mislead users about the

content available on TikTok (Counts I–VIII),[1] that TikTok was designed to be addictive and negatively impacts users' mental health, which is not disclosed to users (Count IX), and that TikTok's Community Guidelines do not align with some content available on the platform (Count X).[2]

Relators moved to dismiss the State's petition under Rule 91a of the Texas Rules of Civil Procedure, arguing that the SCOPE Act claims rely on unconstitutionally vague provisions, as applied to Relators. As to the DTPA claims, Relators explained that because TikTok is not a "good" or "service" under the DTPA, there are no "consumers" under the statute—placing the claims wholly outside the DTPA's reach. MR 0119–23. Relators further argued that the State's DTPA claims are barred by Section 230 and the First Amendment. MR 0132–40.

At the Rule 91a hearing, the State repeatedly admitted it could not explain what conduct violates the SCOPE Act, MR 0430:22–0431:9; *see also* MR 0433:8–9, what the Act's core liability standard—"commercially reasonable"—means for

---

[1] References to "TikTok" herein, absent additional specification, denote the TikTok platform and business.

[2] The State previously filed its DTPA and SCOPE claims as separate petitions: on January 9, 2025, and October 3, 2024, respectively. The Court granted the State's unopposed motion to consolidate the two cases on June 27, 2025. The State did not serve its proposed amended consolidated petition until July 24, 2025, and the operative petition was not filed until August 13, 2025.

TikTok, MR 0421:15–16, or "what [Relators] are currently doing that's alleged to be a violation of the Act," MR 0432:13–15; *see also* MR 0430:22–0431:9; MR 0433:8–9. As Relators told the court, these concessions are the "very definition of vagueness in a statute." MR 0434:9–13. Relators likewise argued that applying the DTPA where no "consumer" exists would give the State a sweeping mandate to regulate all manner of free activities, untethered from the DTPA's text or purpose. The trial court itself flagged concern about the "consequence[s] of the interpretation [the State was] advancing[,]" MR 0393:6–12, yet nonetheless adopted that interpretation in denying Relators' motion without any reasoning.

Relators filed a Petition for a Writ of Mandamus to correct these clear abuses of discretion and now concurrently move for temporary relief to stay the trial court's proceedings pending this Court's disposition of that mandamus petition.

**STANDARD FOR TEMPORARY RELIEF UNDER RULE 52.10**

"In a mandamus proceeding in the Supreme Court or a court of appeals, '[t]he relator may file a motion to stay any underlying proceeding or for any other temporary relief pending the court's action on the petition.'" *In re State*, 711 S.W.3d 641, 644 (Tex. 2024) (alteration in original) (citing Tex. R. App. P. 52.10(a)). The "purpose of relief under Rule 52.10" is to "preserv[e] . . . the parties' rights while the appeal proceeds." *Id.* at 644–45. Rule 52.10 relief protects "part[ies] who [are]

4

very likely to succeed on the merits"—like Relators here—from having "to wait for the lengthy appellate process to play out before exercising [their] legal rights." *Id.* at 645.

When deciding whether to stay trial court proceedings pending appellate review, courts weigh two factors: (1) "the likely merits of the parties' legal positions"—with a stay favored when there is "serious doubt" about the validity of the action to be stayed; and (2) "the balance of harms," comparing prejudice to the applicant if temporary relief is denied against prejudice to the opposing party if relief is granted. *Id.* at 645–46. Texas appellate courts regularly stay proceedings in trial courts while considering mandamus petitions challenging the denial of Rule 91a motions.[3]

---

[3] *See, e.g.*, *In re Butt*, 495 S.W.3d 455, 458, 468 (Tex. App—Corpus Christi-Edinburg 2016, no pet.) (noting that the court had previously stayed trial court proceedings pending review of relators' mandamus petition challenging the trial court's refusal to dismiss "baseless" claims against relator); *In re Home Depot U.S.A., Inc.*, No. 14-24-00864-CV, 2025 WL 899848, at *1 (Tex. App.—Houston [14th Dist.] Mar. 25, 2025, pet. filed Mar. 25, 2025) (noting court had previously stayed trial court proceedings pending review of relators' mandamus petition challenging the denial of its motion to dismiss); *In re Indus. Specialists, LLC*, No. 01-18-00202-CV, 2018 WL 2727606, at *1 (Tex. App.—Houston [1st Dist.] June 7, 2018, no pet.) (same); *In re Sydow Firm, PLLC*, No. 01-23-00694-CV, 2024 WL 2061168, at *1 (Tex. App.— Houston [1st Dist.] May 9, 2024, no pet.) (same); *In re Diamond Offshore Gen., LLC*, No. 01-22-00837-CV, 2023 WL 2483550, at *1 (Tex. App.— Houston [1st Dist.] Mar. 14, 2023, pet. denied) (same).

**ARGUMENT**

Both factors overwhelmingly favor a stay here. First, the "likely merits" present a textbook case for mandamus relief. The trial court's refusal to dismiss the SCOPE Act and DTPA claims does more than create a "serious doubt" about their viability; it directly contradicts controlling law. As the mandamus petition explains, the State repeatedly admitted facts that require a finding of unconstitutional vagueness under controlling law. Likewise, the mandamus petition raises "serious doubt" about the court's unexplained expansion of the DTPA beyond its text and purpose, as well as its rulings disregarding Section 230 immunity and the First Amendment. Second, the risk of irreparable harm to Relators' constitutional and statutory rights far outweighs any harm from briefly staying the proceedings while this Court reviews the mandamus petition.

**I.      Relators are likely to succeed on their mandamus petition.**

Relators are likely to succeed on the merits of their mandamus petition because (1) the trial court "abused its discretion" in four ways when it denied Relators' motion to dismiss; and (2) Relators have "no adequate remedy by appeal" to address these errors. *See In re Essex Ins. Co.*, 450 S.W.3d 524, 526 (Tex. 2014) (setting forth requirements for mandamus relief).

**A.     The trial court abused its discretion.**

A "failure by the trial court to analyze or apply the law correctly []
constitute[s] an abuse of discretion." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.
1992). This is true even when the "erroneous legal conclusion [is] in an unsettled
area of law." *Perry v. Del Rio*, 66 S.W.3d 239, 257 (Tex. 2001). As Relators'
mandamus petition explains, the trial court's rulings satisfy this standard. The court
did not "analyze or apply the law correctly," and thus abused its discretion, in four
ways.

*First*, the court refused to dismiss the SCOPE Act claims for unconstitutional
vagueness, despite the State's repeated inability to explain how Relators allegedly
violated the Act or what the Act's "commercially reasonable" standard requires
Relators to do. *See, e.g.*, *supra* at 3–4. Texas law is clear that a statute violates due
process if it "fails to give fair notice of what conduct may be punished" or "invites
arbitrary or discriminatory enforcement." *Comm'n for Lawyer Discipline v. Benton*,
980 S.W.2d 425, 437 (Tex. 1998). And courts apply a heightened vagueness
standard where, as here, a "statute's language is capable of reaching protected
speech." *Id*. at 438.

Section 509.101 of the SCOPE Act supplies the operative standard: it requires
service providers to "verify, using a *commercially reasonable method* and for each

7

person seeking to perform an action on a digital service as a minor's parent or guardian: (1) the person's identity; and (2) the relationship of the person to the known minor." Tex. Bus. & Com. Code § 509.101(a) (emphasis added). But the statute does not define "commercially reasonable" or provide any guidance on what methods satisfy that standard, even though this "verif[ication]" is the predicate for every other statutory requirement at issue. *See* Mand. Pet. at 18–19. By its terms, the statute "fails to give fair notice of what conduct may be punished, forcing [Relators] to guess at the statute's meaning." *Benton*, 980 S.W.2d at 437.

The State's concessions only confirm the statute's vagueness, as applied to Relators. In its amended petition, the State acknowledges that TikTok offers the "Family Pairing" feature, which "allow[s] 'parents or guardians [to] link their TikTok account to their teens' to manage a variety of content, privacy, and well-being settings." MR 0073–74 (second alteration in original). The State alleges this method is not a "commercially reasonable" method of complying with Section 509.101 without explaining why or identifying what would be reasonable. MR 0090. Its 55-page opposition brief likewise never explained how Relators could come into compliance with the "commercially reasonable" standard. *See generally* MR 0251–317. And at the hearing on Relators' 91a motion, the State again could not articulate what the Act requires, what "commercially reasonable" means, or how Relators

8

allegedly violated the law. *See* Mand. Pet. at 17. Plainly, Defendants have no notice of "what conduct may be punished" under the SCOPE Act when the State itself cannot answer those questions. The trial court recognized that Relators had raised "a fair point" about "what are we alleged to have done wrong" and even suggested that the parties "have a conversation . . . instead of litigating this as a violation," yet still denied the motion. MR 0433:5–434:5. This failure to apply the law, particularly under the stricter vagueness standard required here, is an abuse of discretion. *Walker*, 827 S.W.2d at 840; *Benton*, 980 S.W.2d at 438.

*Second*, the trial court did not analyze or apply the law correctly when it applied the DTPA, for the first time, to an action seeking to regulate alleged conduct that cannot *even theoretically* affect any statutory "consumer." The DTPA defines "consumer" as one "who seeks or acquires by *purchase or lease*, any *goods or services*." Tex. Bus. & Com. Code § 17.45(4) (emphasis added). Unable to identify a single "consumer" affected by the alleged conduct, the State argued that it may bring a DTPA claim even where no "goods," no "services," and no "consumers" are

9

involved.[4] MR 0270–73. The court abused its discretion in adopting that position, thereby transforming this consumer-protection statute into a generalized prohibition on alleged deception—a role the Legislature never authorized. But the DTPA must be applied "to promote its underlying purposes, which are to *protect consumers*." Tex. Bus. & Com. Code § 17.44. The only court to address this question held that the State cannot bring a DTPA claim in the absence of a consumer. *See Word of Faith World Outreach Ctr. Church, Inc. v. Morales*, 787 F. Supp. 689, 698 (W.D. Tex. 1992), *rev'd on other grounds*, 986 F.2d 962 (5th Cir. 1993). Indeed, the State's own pleading uses the term "consumers" 66 times, *see generally* MR 0021–0093, and exclusively bases each DTPA claim on provisions requiring misstatements about "goods or services," *see* MR 0076–0088 (each DTPA claim exclusively alleging violations of Tex. Bus. & Com. Code §§ 17.46(b)(5), (7), (9), and/or (24)).

*Third*, the trial court abused its discretion when it refused to apply Section 230's immunity to bar the DTPA claims against Relators. Section 230 provides "broad immunity" to "[w]eb-based service providers for all claims stemming from

---

[4] Both parties agree that TikTok is not a "good," which the DTPA defines as "tangible chattels or real property purchased or leased for use." Tex. Bus. & Com. Code § 17.45(1). TikTok is also not a "service," under the DTPA, defined as "work, labor, or service purchased or leased for use." *Id.* § 17.45(2). The Texas Supreme Court has held that "services" under the DTPA must involve "activity on behalf of one party by another"—"similar in nature to work or labor." *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174 (Tex. 1980).

their publication of information created by third parties," including on a motion to dismiss. *A.B. v. Salesforce, Inc.*, 123 F.4th 788, 794 (5th Cir. 2024) (emphasis omitted) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008)); *see* 47 U.S.C. § 230(c). The DTPA claims attempt to impose liability for Relators' role as a publisher of third-party content on TikTok's platform—exactly what Section 230 forbids. Recasting them as deception or failure-to-warn claims does not avoid Section 230, because those claims still target TikTok's publishing decisions. *See, e.g.*, *In re Facebook, Inc.*, 625 S.W.3d 80, 95–96 & n.11 (Tex. 2021) (holding Section 230 barred claims "premised on Facebook's alleged failures to warn or to adequately protect Plaintiffs from harm caused by other users"); *State ex rel. Rosenblum v. TikTok Inc.*, No. 24CV-48473, 2025 Ore. Cir. LEXIS 5135, at *27–28 (Or. Cir. Ct. June 13, 2025) (TikTok's "'algorithms,' 'autoplay,' 'infinite scroll,' and incessant notifications are all content amplification features meant to publish content in a manner that increases user engagement" and protected publishing activity under Section 230).

*Finally*, the trial court misapplied First Amendment doctrine. The State's DTPA claims directly burden Relators' protected expressive activities—in particular, Relator TikTok Inc.'s choices about how to present third-party speech available on the TikTok platform. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 716

11

(2024). And part of the injunction the State seeks would compel Relators to convey the State's message about how to label and communicate about content, in violation of core First Amendment principles. *See Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018).

### B. Relators have no adequate remedy through appeal.

Mandamus is required where, absent relief: (1) the parties and public would waste "time and money . . . on fatally flawed proceedings," *In re Essex*, 450 S.W.3d at 528; or (2) a litigant would "suffer impairment or loss of 'important substantive . . . rights,'" including those conferred by statutes that "provid[e] covered defendants with immunity from suit," *In re Facebook*, 625 S.W.3d at 87 (alterations in original) (internal quotations omitted). Both circumstances are present here.

*First*, Relators should not be forced to undergo time-intensive and expensive discovery, trial, and appeal before obtaining an appellate ruling that the SCOPE Act and DTPA claims are "fatally flawed." *In re Essex*, 450 S.W.3d at 528. Mandamus is necessary to preserve Relators' substantive rights and to spare the parties and public from wasting resources on a set of claims that have no legal basis.

*Second*, absent mandamus relief, Relators' "important substantive and procedural rights," including their immunity from suit under Section 230 and their constitutional protections under the Due Process Clause and the First Amendment,

will be "impair[ed] or los[t]." *See In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 136 (Tex. 2004). The Texas Supreme Court has already held that Section 230 immunity is among the "important substantive . . . rights" that can "only be vindicated by dismissal" and mandamus, rather than appeal. *In re Facebook*, 625 S.W.3d at 86–87 (alteration in original). Likewise, forcing Relators to litigate under the vague SCOPE Act provisions at issue—when the State itself cannot articulate what conduct the Act prohibits or how Relators could comply—violates their constitutional right to fair notice and freedom from arbitrary enforcement. *See Benton*, 980 S.W.2d at 437. That constitutional injury is immediate, ongoing, and not remediable on appeal.

## II. Temporary relief is necessary to prevent irreparable harm to Relators' constitutional and statutory rights.

The "balance of harms," *In re State*, 711 S.W.3d at 645, weighs decidedly in favor of a stay.

**Harm to Relators.** Relators will be irreparably harmed in three ways if a stay is denied. *First*, Relators have "raised serious doubt[s] about the constitutionality" of the SCOPE Act as applied to them, and about the State's use of the DTPA to regulate Relators' First Amendment-protected expressive activities. *See id.* at 646; *see also supra* 7–9, 11–12. Any continued enforcement of vague statutory standards, or continuation of claims burdening protected speech, would amount to an ongoing

13

constitutional violation that "could not be remedied or undone" by later appellate review. *See In re State*, 711 S.W.3d at 646.

*Second*, absent a stay, Relators will be required to expend time and resources defending against claims that have no basis in law, in direct contradiction of the purpose of Rule 91a. *In re City of Houston*, No. 01-24-00629-CV, 2024 WL 4846843, at *3 (Tex. App.—Houston [1st Dist.] Nov. 21, 2024, no pet.) ("The purpose of Rule 91a is to require the early and speedy dismissal of baseless claims."); *see also In re Butt*, 495 S.W.3d 455, 460 (Tex. App.—Corpus Christi-Edinburg 2016, no pet.) ("[M]andamus review of orders denying Rule 91a motions comports with the Legislature's requirement for an early and speedy resolution of baseless claims."). Requiring Relators to proceed through discovery and trial would eviscerate those protections.

*Third*, a stay is essential to preserve Relators' right to immunity from suit under Section 230. Section 230 is not merely an affirmative defense; it confers an entitlement "not to stand trial or face the other burdens of litigation" on claims that target a service provider's publication of third-party content. *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009); *see* 47 U.S.C. § 230(e)(3). If proceedings continue, that immunity will be irretrievably lost.

14

**Harm to the State.** By contrast, the State faces, at most, minimal harm from a temporary stay. The only potential prejudice is a brief delay in the case schedule while this Court considers the mandamus petition. But this purported harm alone is insufficient to justify denying Relators' request for a stay. *See, e.g.*, *Transocean Offshore Deepwater Drilling, Inc. v. Seadrill Ams., Inc.*, No. H–15–144, 2015 WL 6394436, at *2 (S.D. Tex. Oct. 22, 2015) (finding that the "[m]ere delay that inherently results from a stay" was insufficient harm to deny a request for stay pending *inter partes* review of a patent application).

Scheduling delays simply cannot outweigh the constitutional and statutory rights at stake here; if they could, a real party in interest could always invoke deadlines to defeat any stay request—a result the law does not permit.

## CONCLUSION AND PRAYER

For the reasons stated above, Relators respectfully request that this Court grant its motion for temporary relief and stay proceedings below pending resolution of Relators' mandamus petition. Tex. R. App. P. 52.10(a). Relators also request such other and further "just relief" to which this Court finds Relators are entitled. Tex. R. App. P. 52.10(b).

November 18, 2025

Respectfully submitted,

/s/ Brandon Duke

Neema T. Sahni (*pro hac vice*)
nsahni@cov.com
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Tel. (424) 332-4800
Fax. (424) 332-4749

Brandon Duke
bduke@omm.com
**O'MELVENY & MYERS LLP**
700 Louisiana St., Suite 2900
Houston, TX 77002
Tel.  (832) 254-1500
Fax. (832) 254-1501

Megan A. Crowley (*pro hac vice*)
mcrowley@cov.com
**COVINGTON & BURLING LLP**
850 Tenth Street, NW
Washington, DC 20001
Tel. (202) 662-6000
Fax. (202) 778-5112

**ATTORNEYS FOR RELATORS**

16

## CERTIFICATE OF COMPLIANCE

I certify that this Motion for Temporary Relief contains 3,410 words as calculated under Texas Rule of Appellate Procedure 9.4(i)(1).

I certify that Relators' counsel has made a "diligent effort to notify all parties by expedited means" that this motion for temporary relief would be filed, as required by Texas Rule of Appellate Procedure 52.10(a).

/s/ Brandon Duke

Brandon Duke
bduke@omm.com
**O'MELVENY & MYERS LLP**
700 Louisiana St., Suite 2900
Houston, TX 77002
Tel. (832) 254-1500
Fax. (832) 254-1501

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was electronically filed and served on all counsel of record on November 18, 2025.

/s/ Brandon Duke

Brandon Duke
bduke@omm.com
**O'MELVENY & MYERS LLP**
700 Louisiana St., Suite 2900
Houston, TX 77002
Tel.  (832) 254-1500
Fax. (832) 254-1501

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Court Services on behalf of Brandon Duke
Bar No. 24094476
ommsvc2@omm.com
Envelope ID: 108205774
Filing Code Description: Original Proceeding Petition
Filing Description: Petition for Writ of Mandamus
Status as of 11/19/2025 7:48 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Rebecca Hermann | | rebecca.herrmann@oag.texas.gov | 11/18/2025 7:46:49 PM | SENT |
| Zoann Willis | | zoann.willis@oag.texas.gov | 11/18/2025 7:46:49 PM | SENT |
| Richard Mccutcheon | | richard.mccutcheon@oag.texas.gov | 11/18/2025 7:46:49 PM | SENT |
| Megan Crowley | | mcrowley@cov.com | 11/18/2025 7:46:49 PM | SENT |
| Calendar Litigation | | litigationcalendar@omm.com | 11/18/2025 7:46:49 PM | SENT |
| Jerry Bergman | | jerry.bergman@oag.texas.gov | 11/18/2025 7:46:49 PM | SENT |
| Melinda Pate | | melinda.pate@oag.texas.gov | 11/18/2025 7:46:49 PM | SENT |
| Hannah Campus | | hannah.campus@oag.texas.gov | 11/18/2025 7:46:49 PM | SENT |
| Madeline Fogel | | madeline.fogel@oag.texas.gov | 11/18/2025 7:46:49 PM | SENT |
| Adam Laxalt | | alaxalt@cooperkirk.com | 11/18/2025 7:46:49 PM | SENT |
| David Thompson | | dthompson@cooperkirk.com | 11/18/2025 7:46:49 PM | SENT |
| Brian Barnes | | bbarnes@cooperkirk.com | 11/18/2025 7:46:49 PM | SENT |
| Adam Holtz | | adam.holtz@oag.texas.gov | 11/18/2025 7:46:49 PM | SENT |
| Brandon Duke | | bduke@omm.com | 11/18/2025 7:46:49 PM | SENT |
| Trial Court | | 250.submission@traviscountytx.gov | 11/18/2025 7:46:49 PM | SENT |